# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM JUNIOR SAVAGE, | Civil Action No. 11 – 518 |
| Petitioner, | |
| v. | District Judge Mark R. Hornak |
| | Chief Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT BRIAN COLEMAN, THE DISTRICT ATTORNEY OF THE COUNTY OF FAYETTE and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | |
| Respondents. | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus (ECF No. 2) be denied.

### II. REPORT

William Junior Savage (hereinafter referred to as "Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Fayette. Pending before the Court is his Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. He challenges his May 20, 2010 judgment of sentence for aggravated indecent assault, aggravated indecent assault of a child, indecent assault of a victim less than age thirteen, indecent assault without consent,

and corruption of minors. As explained herein, Petitioner is not entitled to habeas corpus relief and his petition should be denied.

## A. Relevant Factual and Procedural History

The facts of the case as set forth by the Court of Common Pleas of Fayette County are as follows:

> The victim, hereinafter "B.S.", born on October 29, 1999, testified that in the summer of 2009, she lived in Uniontown, Fayette County, Pennsylvania, with her father, the [Petitioner] herein, her mother [Suzanne Savage], and five brothers. B.S. stated that [Petitioner] bought her a two piece bathing suit at Wal-Mart to wear to a family reunion. At [Petitioenr's] behest, she tried the swimsuit on and then fell asleep on the living room couch. At some point, she heard her mother come downstairs and tell [Petitioner], that B.S. should be in bed. [Petitioner] responded by saying that he would bring her up.
>
> B.S. further testified that [Petitioner] put her on his lap and "put his fingers in my private area." She identified her private area as between her legs in the front. She said [Petitioner's] action hurt her and that she was "scared." [Petitioner] then carried B.S. upstairs. She also told the jury that during the same summer, [Petitioner] had come into her bedroom and put "his hand up by my private." She said he would wake her up and "put his hand in my pants . . . underwear and would hold her." His hand was on her bottom or butt. B.S. testified that this conduct by [Petitioner] happened often and that it scared her. The victim states that she told her mother what had happened on the morning after the bathing suit incident, whereupon her mother removed herself, B.S. and her siblings to a shelter.
>
> An in camera proceeding was held with respect to Adrienne Anderson, a Children and Youth Services worker; Sara Gluzman, a forensic interviewer from the Children's Place at Mercy Hospital in Pittsburgh; and Suzanne Savage, the victim's mother. [The] trial court determined that their testimony met the requirements of 42 Pa. C.S.A. § 5985.
>
> Suzanne Savage then testified to the jury that the family lived on Collins Avenue in Uniontown, Fayette County during the summer of 2009. In early August of that year, she had a conversation with her daughter, B.S., about what had happened the previous night. She said she had come downstairs several times to put her daughter to bed, only to be told by her husband, [Petitioenr] that he would bring the child up, which he finally did about 3:00 a.m. Ms. Savage stated that

2

her daughter told her that [Petitioner] had "pulled my bottom piece and was fingering my private." She said she waited three weeks before she called CYS to report this incident. CYS workers then took them to Mercy Hospital's Children's Place.

Adrienne Anderson testified that on August 28, 2009, she received this case referral. She interviewed B.S. on September 14, 2009, at Lafayette School in Uniontown, where the victim told her that her father had stuck his hand down the front of her two-piece bathing suit. Ms. Anderson also stated that the victim told her that [Petitioner] stuck his finger in her while she was in the living room trying on the bathing suit.

Sara Gluzman testified that she conducted a forensic interview with B.S. on September 17, 2009 at Mercy Hospital's Westmoreland County facility. She stated that B.S. told her that [Petitioner] had "pulled my bottom piece of the bathing suit and put his finger in my private." Ms. Gluzman said the child also told her that her "private hurt the next day." B.S. also told the interviewer that [Petitioner] would come into her bedroom and "put his hand in her pants and underwear" on a weekly basis. [Petitioner's] actions made the child feel "mad and sad at the same time." Ms. Gluzman had B.S. use the anatomically correct doll to demonstrate for her during the interview.

Uniontown Police Officer David J. Rutter testified that on October 17, 2009, he saw [Petitioner] at the Uniontown police station. He knew [Petitioner] from [Petitioner's] employment at a local service station and he observed Detective Donald Gmitter of the Uniontown Police Department read him his Miranda warnings. Officer Rutter witnessed [Petitioner] sign the Miranda waiver form, and then [Petitioner] asked for help with his overactive sexual desires. [Petitioner] then told Officer Rutter that he had put his "hand down her pants" and his finger inside his daughter. The officer then stated that [Petitioner] agreed to put the oral statement into written form.

[Petitioner] took the stand in his own defense, denying any sexual contact with his daughter. He said he only told the police what they wanted to hear because they told him he would never see his children again.

(Respondents' Exh. 9, ECF No. 10-11 at 2-5)

Petitioner was charged with and pled not guilty to two counts of aggravated indecent assault, one count of aggravated indecent assault of a child, one count of indecent assault of a victim less than thirteen years of age, one count of indecent assault without consent, and one

count of corruption of minors.[1] (Resp. Exh. 8, ECF No. 10-10.) He proceeded to a trial by jury, which took place on May 5-6, 2010. (Resp. Exh. 10, ECF No. 10-12; Exh. 11, ECF No. 10-13.) Following the trial, the jury found Petitioner guilty of all of the aforementioned charges. (Resp., ECF No. 10-13.) On May 20, 2010, he was sentenced to a term of imprisonment of seventy-two to one hundred and forty-four months on one count of aggravated indecent assault, and a consecutive twelve to thirty-six months on the conviction of indecent assault of a child less than thirteen years of age. (Resp. Exh. 12, ECF No. 10-14.) No further penalties were imposed on the remaining convictions. Id. Petitioner was also advised that he was subject to lifetime registration requirements under Megan's Law, 42 Pa. C.S.A. §§ 9791, *et seq.* Id.

Petitioner filed a direct appeal of his judgment of sentence on June 9, 2010, raising one issue: whether the evidence was sufficient to prove the committed crimes. (Resp. Exh. 24, ECF No. 10-26; Exh. 26, ECF No. 10-32 at 1-17.) The trial court filed its Opinion on June 30, 2010, (Resp. Exh. 9, ECF No. 10-11), and the Pennsylvania Superior Court affirmed the judgment of sentence on November 15, 2010 (Resp. Exh. 28, ECF No. 10-34). Petitioner did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, (Resp. Exh. 14, ECF No. 10-16), nor did he file a Petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA").

The instant Petition for Writ of Habeas Corpus was filed on April 20, 2011, and in it Petitioner raises general, non-specific complaints about matters that occurred in his criminal proceedings. (ECF No. 3.)

## B. Standards Governing Federal Habeas Corpus Review

---

[1] The trial judge dismissed one count of aggravated indecent assault – thread of forcible compulsion and one count of indecent assault threat of forcible compulsion.

1. Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See*, *e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2. Procedural Default Doctrine

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. Id.; Sistrunk, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)).[2] A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can

---

[2] *See also* Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494. Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain circumstances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Carrier, 477 U.S. at 495 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340 (1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts. In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a

substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. Schlup v. Delo, 513 U.S. 298, 324 (1995). "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). This standard "does not merely require a showing that a reasonable doubt [as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty." Schlup, 513 U.S. at 329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House v. Bell, 547 U.S. 518, 538 (2006).

While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. Id. In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400 (1993). Consequently, a finding of "actual innocence" is not an independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default. Id. at 404. In the absence of new evidence of the petitioner's

8

innocence, the existence of an underlying constitutional violation provides a federal court with no basis for adjudicating a procedurally defaulted claim. Goldblum v. Klem, 510 F.3d 204, 225-226 (3d Cir. 2007). Only after the presentation of new evidence may a federal court proceed to consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable juror would vote to convict the petitioner of the crime for which he or she is incarcerated. House, 547 U.S. at 537-39; Goldblum, 510 F.3d at 225-26.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). *See* Wenger v. Frank, 266 F.3d 218, 227 (3d Cir. 2001). Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims but must not decide the merits of the claims that are barred under the procedural default doctrine. Id.

3. Standard of Review for Exhaustion (but not Procedurally Defaulted) Claims

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence . . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 100 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

9

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Fisher, 606 F.3d 85, 95 (3d Cir. 2010), *aff'd*, Greene v. Fisher, 132 S. Ct. 38 (2011).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, 130 S. Ct. 1855 (2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not whether it was an abuse of discretion for her to have done so -- the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." § 2254(d)(1).

11

Lett, 130 S. Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision -- or, for that matter, the trial judge's declaration of a mistrial -- was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event -- for the reasons we have explained -- **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

Id. at 1865, n.3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Longberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Petitioner's claims will be reviewed in accordance with the standards set forth above.

## C. Petitioner's Claims

1. <u>Unexhausted and Procedurally Defaulted Claims</u>

As an initial matter, the undersigned notes that Petitioner has failed to comply with Rule 2(c) of the Rules Governing Habeas Corpus Cases. Specifically, Petitioner has presented the Court with three handwritten pages of general complaints about his criminal proceedings that is difficult to decipher at best. He did not specify the grounds for relief in his Petition and did not state the facts supporting each ground. *See* Rule 2(c)(1) and (2) of the *Rules Governing Section 2254 Cases in the United States District Courts*. Nevertheless, it appears that Petitioner raises four or five claims in his Petition. First, Petitioner claims that the Commonwealth violated the discovery rule by failing to turn over certain discovery materials within the time allotted by the trial court's order. However, he does not dispute that the discovery was eventually turned over to the defense, albeit late. Second, Petitioner claims that the prosecutor made inappropriate comments during closing arguments, injecting his personal opinion regarding Petitioner's credibility. Third, Petitioner claims that the Commonwealth did not sustain its burden of proof at trial because his wife provided him with an alibi defense and testified that she was in the room with Petitioner when their daughter was in the bathing suit. Fourth, he claims that his right to a speedy trial was violated. Finally, there are several instances where he indicates that his trial counsel was ineffective for failing to raise or object to these issues.

While Petitioner did file a direct appeal, the only claim he raised before the Pennsylvania Superior Court was whether there was sufficient evidence to sustain his convictions for the crimes charged. No other issues were raised on appeal and Petitioner did not file a PCRA petition raising his claims of ineffective assistance of trial counsel. As such, with the possible

exception of claim three, it appears that all of Petitioner's claims are unexhausted because they were not properly presented at each required phase in his state court proceedings prior to Petitioner raising the claims in his federal habeas Petition. For example, Petitioner did not raise his claims regarding the discovery violation, inappropriate comments during closing arguments and speedy trial violation on direct appeal. Also, because he did not file a petition under the PCRA, he did not present his ineffective assistance of counsel claims through the proper channels of collateral appeal. Finally, as it is clear that Petitioner would be time-barred from returning to state court in order to raise these claims in the proper procedural manner, the claims are procedurally defaulted and barred from federal habeas review. For this reason alone, the Court should deny the Petition for Writ of Habeas Corpus, at least with regard to all but claim three.[3]

2. Sufficiency of the Evidence Claim

As previously mentioned, Petitioner did raise one issue on direct appeal challenging the sufficiency of the evidence to support his conviction. In his current habeas Petition, Petitioner raises several general allegations alluding to this very fact, primarily based on his alleged alibi defense, his wife who testified that she was in the room with Petitioner while B.S. was in her bathing suit. At trial, Petitioner took the stand and testified in his own defense. He denied putting his hands down the bathing suit bottom and testified that he only made his statement to police due to their threat that he would never see his children again unless he admitted to the alleged acts. He denied putting his hand down his daughter's pants and digitally penetrating her.

---

[3] As explained above, Petitioner can overcome the procedural default of his claims by demonstrating "cause" for the default and "actual prejudice." *See* Coleman, 501 U.S. at 750; Martinez v. Ryan, 132 S. Ct. 1309 (2012); Murray, 477 U.S. at 494. Upon review of the record, however, Petitioner has not set forth any arguments to such effect.

Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. *Accord*, Moore v. Deputy Commissioner(s) of SCI-Huntingdon, 946 F.2d 236, 243 (3d Cir. 1991), *cert. denied*, 503 U.S. 949 (1992). A federal court must apply this standard, "'with the explicit reference to the substantive elements of the criminal offense as defined by state law.'" Orban v. Vaughn, 123 F.3d 727, 731 (3d Cir. 1977) (quoting Jackson, 443 U.S. at 324 n.16), *cert. denied*, 522 U.S. 1059 (1988). *See also* Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir.) (federal habeas courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law), *cert. denied*, 520 U.S. 1268 (1997). The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence. Jackson, 443 U.S. at 326. Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, the court's determination is entitled to great weight. Parke v. Raley, 506 U.S. 20, 36 (1993). This deferential test places a very heavy burden on the appellant. United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995).

The test for insufficiency of evidence is the same under both Pennsylvania and federal law. *See* Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir.

1992), *cert. denied*, 506 U.S. 1089 (1993); Commonwealth v. Brickler, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged).

At Petitioner's trial, the jury heard from the victim who testified that she was ten years old at the time of trial and that her father put his fingers in her private area without her consent. The victim also testified that her father had often, on prior occasions, put his hand inside her underwear to hold her bottom or butt without her consent. The jury also heard from the victim's mother, Suzanne Savage, as well as Adrienne Anderson, a Children and Youth Services Investigator, and Sara Gluzman, a child abuse forensic interviewer, all of whose testimony supported that of the victim. Finally, the jury heard from both Detective Gmitter and Officer Rutter who testified that Petitioner had admitted to putting his finger inside his daughter's vagina. While Petitioner testified in his own defense and denied the allegations against him, the jury did not find him credible. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence was clearly sufficient to prove Petitioner guilty beyond a reasonable doubt on all of the crimes of which he was convicted.

Petitioner appears to suggest that he could not have been found guilty as a matter of law because his wife testified that she, too, was in the living room with the Petitioner and their daughter at the same time their daughter was trying on the bathing suit. Petitioner mischaracterizes his wife's testimony. While his wife did, in fact, testify that she was in the living room with the Petitioner when their daughter tried on the two-piece bathing suit, she also testified that their daughter remained in the bathing suit while the three of them thereafter

watched a movie. She stated that their daughter fell asleep while watching the movie, and that after it was over she left Petitioner and their sleeping daughter on the couch while she went upstairs to put her sons to bed. She said that she came down the stairs five or six times asking her husband to put their daughter to bed but each time he told her that he would do it later. She eventually went to sleep and was woken up around 3:00 a.m. when her husband came to bed. The next morning, while Petitioner was out gardening, she asked her daughter what had happened the night before and was told that her father had fingered her in her private area. Petitioner's argument that he could not have been guilty of the charged crimes because his wife's testimony provided him with an alibi defense is therefore without merit.

Based on a review of the state court record, it is clear that the Pennsylvania Superior Court's conclusion that the evidence presented was sufficient to sustain Petitioner's conviction is neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to habeas relief and his Petition should be denied.

### D. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability should be denied.

### III.  CONCLUSION

For the reasons stated herein, it is respectfully recommended that the Petition for Writ of Habeas Corpus (ECF No. 2) be denied.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: July 26, 2013

_____
Lisa Pupo Lenihan

                                                          Chief United States Magistrate Judge

Cc:     William Junior Savage
           JN-8912
           SCI Fayette
           PO Box 9999
           Labelle, PA  15450
           *Via First Class U.S. Postal Mail*

           Counsel of Record
           *Via ECF Electronic Mail*